[No. D004797. Fourth Dist., Div. One. July 31, 1986.]

THE PEOPLE, Petitioner, v.
THE MUNICIPAL COURT FOR THE NORTH COUNTY JUDICIAL
DISTRICT OF SAN DIEGO COUNTY, Respondent;
THOMAS JOSEPH SANSONE, Real Party in Interest.

**COUNSEL**

Edwin L. Miller, Jr., District Attorney, Peter C. Lehman and Thomas F. McArdle, Deputy District Attorneys, for Petitioner.

No appearance for Respondent.

Diane C. Campbell and Thomas J. Warwick for Real Party in Interest.

**OPINION**

**LEWIS, J.**—Real party, Thomas Joseph Sansone, was arrested December 28, 1985, for driving under the influence of alcohol. Pursuant to Vehicle Code section 13353, he chose and successfully completed the urine test and was charged with Vehicle Code section 23152, subdivisions (a) and (b). Sansone then brought a motion to exclude evidence of his blood alcohol content on the basis the urine test does not meet the *Kelly-Frye* (*Frye* v. *United States* (D.C.Cir. 1923) 293 Fed. 1013 [54 App.D.C. 46, 34 A.L.R. 145]; *People* v. *Kelly* (1976) 17 Cal.3d 24 [130 Cal.Rptr. 144, 549 P.2d 1240]) criteria for admissibility of evidence. At the hearing, the People called one witness, Janet LaMott, who is forensic alcohol supervisor of the San Diego Regional Crime Laboratory. She explained the method used to determine blood alcohol content, the way to obtain proper samples and the system of converting urine alcohol results to blood alcohol percentages. LaMott also testified that in her opinion a urine test done properly will give accurate results, an opinion shared by many but not all scientists. At the close of the hearing, the court ruled to exclude the result of Sansone's urine test because the prosecution did not prove that urine tests are generally accepted as reliable within the scientific community. On defendant's motion, the court dismissed count two, a violation of Vehicle Code section 23152, subdivision (b).

On the People's request, the municipal court granted a stay of trial which allowed them time to file a petition for writ of mandate or prohibition in the superior court. That petition was denied, the court granting a 10-day stay of trial until July 7, 1986, a stay which was continued by this court pending response and disposition of the matter.

■ The People challenge the order excluding the urine test results on the basis the *Kelly-Frye* rule does not apply. They are correct because there is nothing new about the use of urine tests to ascertain the level of alcohol in the blood. In *Frye*, the prosecution objected to defendant's use of results from a lie detector. The court stated: "Just when a scientific principle or discovery crosses the line between the experimental and demonstrable stages is difficult to define. Somewhere in this twilight zone the evidential force of the principle must be recognized, and while courts will go a long way in admitting expert testimony deduced from a well-recognized scientific principle or discovery, the thing from which the deduction is made must be sufficiently established to have gained general acceptance in the particular field in which it belongs." (*Frye* v. *United States, supra,* 293 Fed. at p. 1014.) Likewise, in *Kelly,* where the evidence sought to be admitted was a voiceprint, the court repeatedly limited the application of the *Frye* test to *new* scientific methods of proof. There is nothing new about using the urine test to determine blood-alcohol content. It has been routinely used in California courts for over 20 years (see *People* v. *Conterno* (1959) 170 Cal.App.2d Supp. 817, 823 [339 P.2d 968]). The Legislature, some 20 years ago, incorporated urine tests into the implied consent law (Veh. Code, § 23157, see former Veh. Code, § 13353, added Stats. 1966, ch. 138, § 1). Urine, blood and breath tests are all carefully regulated to assure the accuracy of the test results (see Cal. Admin. Code, tit. 17, part 1, § 1215 et seq.). Real party argues that urine testing has been commonplace for many years but argues that this deals only with individual samples and not with the acceptability of the procedure itself. There is no appellate decision that establishes the general acceptance of urinalysis testing, says real party, and since the People failed to present any evidence on that point, the results must be excluded. However, were the procedure itself not acceptable, its use would not be commonplace; were the procedure not acceptable, the Legislature would not have included it as an alternative of testing for blood alcohol levels.

Real party suggests the procedure for collecting urine samples makes the results unreliable because one can never completely void one's bladder. However, the conversion factor derived after empirical studies takes this into account. The accuracy of a particular test may be compromised by the subject failing to completely void his bladder but this does not detract from the validity of the procedure itself.

Real party points out that just because a procedure has been used for years should not place it beyond attack. But absent a showing of new information as to a particular scientific principle or discovery there is no reason to challenge an already established procedure. It is in such situations that it is appropriate for the court to take judicial notice (see Evid. Code, §§ 451, subd. (f), 452, subds. (g) and (h)). Here, real party presents no new scientific data concerning the reliability of urine testing.

When the court ruled that the urine test results were not admissible, it then granted the real party's motion to dismiss count two (Veh. Code, § 23152, subd. (b)). The People did not object and real party suggests that this was a waiver. However, in view of the ruling, the People had nothing to object to since absent the test results they could not prove Vehicle Code section 23152, subdivision (b). Since applying the *Kelly-Frye* rule to a long used, established scientific procedure was error, the ruling that the test results were inadmissible likewise was error as was the dismissal of count two.

An alternative writ or order to show cause would add nothing to the presentation. A peremptory writ is proper. (Code Civ. Proc., § 1088; *United Nuclear Corp.* v. *Superior Court* (1980) 113 Cal.App.3d 359 [169 Cal.Rptr. 827]; *Goodenough* v. *Superior Court* (1971) 18 Cal.App.3d 692, 697 [96 Cal.Rptr. 165].)

Let a peremptory writ issue directing the municipal court to vacate its orders excluding urine test results and dismissing count two. The stay issued by this court on July 3, 1986, is vacated.

Wiener, J., concurred.

**STANIFORTH, Acting P. J.**—I respectfully dissent. The People have the burden of showing the test used is valid which they failed to do in this case as a matter of proof. This does not mean the test is not valid but merely that the People failed to prove it here. I would deny the petition.

On August 29, 1986, the opinion was modified to read as printed above. The petition of real party in interest for review by the Supreme Court was denied October 30, 1986. Mosk, J., was of the opinion that the petition should be granted.